IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**STEPHANIE HOWARD**                                                    **APPELLANT**

v.                                                    Civil No. 1:15-cv-48-HSO-JCG

**FINA OIL AND CHEMICAL CO., et al.**                         **APPELLEES**


**FINA OIL AND CHEMICAL CO., et al.**                         **PLAINTIFFS**

v.                                                    Adversary Pro. No. 14-05009-NPO

**STEPHANIE HOWARD**                                                    **DEFENDANT**


**IN RE: STACY HOWARD AND**                        **CHAPTER 13 DEBTORS**
**STEPHANIE HOWARD**                           Bankruptcy Case No. 1:00-bk-51897


**MEMORANDUM OPINION AND ORDER AFFIRMING THE JUDGMENT
OF THE UNITED STATES BANKRUPTCY COURT
AND DISMISSING APPEAL**

THIS MATTER COMES BEFORE THE COURT as an appeal taken by Stephanie Howard ("Debtor" or "Appellant") from the February 6, 2015, Order of the United States Bankruptcy Court for the Southern District of Mississippi. Appellant's Brief [20], at 2; Order, R. [3], at 42.[1]  The Appellees here, Fina Oil and Chemical Company, Murphy Oil U.S.A., Inc., Vintage Petroleum, Inc., Champlin Petroleum Company, Exxon Corporation, Kerr-McGee Oil & Gas Corporation, TXO Production, Placid Oil Company, Amoco Production Co., Union Oil Company of

---

[1] For purposes of consistency, the Court's citations use ECF pagination throughout rather than the "Record on Appeal" pagination, present only in the footer to documents in ECF Docs. 3 and 16.

California, Phillips Petroleum Company, Conoco, Inc., Bass Enterprises Production Company, Arco Oil and Gas Company, Mobil Oil Exploration & Producing Southeast, Inc., Inexco Oil Company, Oxy USA, Inc., Conquest Exploration Company, Chevron U.S.A. Inc., Chevron Corporation, Texaco Inc., Four Star Oil & Gas Company, Shell Western E&P, Inc., and Moon-Hines-Tigrett Operating Company, Inc. (collectively, "Plaintiffs-Appellees"), were plaintiffs in the Adversary proceeding below.  A group of Plaintiffs-Appellees represented by attorney Jeffrey P. Reynolds (the "Reynolds Plaintiffs") have filed a brief in response [26], in which other Plaintiffs-Appellees have joined [27–29], and Debtor-Appellant has filed a Reply [30].

This Court has jurisdiction to hear an appeal of a bankruptcy court order as provided by 28 U.S.C. § 158.  Having reviewed the briefs of counsel, relevant legal authorities, and the record of the Bankruptcy Court, including the February 6, 2015, Order denying Debtor's three post-judgment motions, the Court finds that the Bankruptcy Court's February 6, 2015, Order should be affirmed and this appeal dismissed.

## I. BACKGROUND

A.   The Related Proceedings

Debtor's late father, Gerald Donald ("Mr. Donald"), acquired a certain piece of real property in Wayne County, Mississippi (the "Property"), in 1991.  Quitclaim Deed [5-1], at 48.  In 1996, Mr. Donald filed a State court lawsuit, now styled *Stephanie Howard, Executrix of the Estate of Gerald Donald v. Amoco Production*

*Co. et al.*, No. 5-97-55, in the Circuit Court of Wayne County, Mississippi,[2] and in 1998, he filed a federal suit, now styled *Stephanie Howard, Executrix of the Estate of Gerald Donald v. Marvin Lewis Davis et al.*, No. 2:98-CV-15-KS-MTP, in the United States District Court for the Southern District of Mississippi, Hattiesburg Division. State Court Compl. [5-1], at 29; Federal Court Compl. [5-1], at 49. Both suits sought damages and declaratory or injunctive relief for alleged contamination of the Property by Plaintiffs-Appellees and other named defendants due to disposal of radioactive materials and other hazardous substances.

Debtor and her then-husband, Stacy Howard,[3] filed a Chapter 13 bankruptcy petition on May 5, 2000. Pet. [16], at 97–98. They filed statements and schedules in the bankruptcy proceedings on August 7, 2000. Schedules [16], at 99–125. The Bankruptcy Court entered an Order confirming Debtor's Chapter 13 plan on November 6, 2000. Order Confirming Plan [16], at 126.

Mr. Donald passed away on January 15, 2001, leaving Debtor as his sole heir and beneficiary in his will. Pet. for Probate [16], at 131; Will [16], at 134. On February 1, 2001, Debtor opened Mr. Donald's probate estate. Pet. for Probate [16], at 131. On March 29, 2001, Debtor filed a motion to substitute plaintiffs in the State court suit. State Court Motion to Substitute [5-1], at 82. The State court

---

[2] The State court lawsuit was originally filed in Hinds County, Mississippi, and transferred to Wayne County, Mississippi. *See* Feb. 6, 2015, Order [3], at 46 n.7.

[3] Stacy Howard is now deceased.

3

granted the motion on April 6, 2001, substituting Debtor in her capacity as executrix of Mr. Donald's estate as the plaintiff in the State court proceedings. Order Substituting Parties [16], at 140.  Debtor also filed a Motion to enforce a $380,000.00 settlement agreement in the State court proceedings on August 21, 2002.  Mot. to Enforce [5-5], at 115–30.  Debtor's position in that motion was rejected by the circuit court and ultimately by the Mississippi Supreme Court on March 3, 2005.  *Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882, 889–90 (Miss. 2005).

In May 2004, Debtor filed a motion to substitute plaintiffs in the federal court suit which was granted on February 16, 2005.  Order Granting Mot. Substitute [5-1], at 100.  Thus, Debtor was actively pursuing both lawsuits or claims regarding the Property in State and federal court during the pendency of her bankruptcy proceedings.  It is undisputed that Debtor did not disclose either claim during the bankruptcy proceedings.

On August 15, 2005, the Bankruptcy Court entered a discharge of Debtor and closed the bankruptcy proceedings.  Discharge [5], at 171; Closing Order [5], 173. Debtor obtained this discharge having never disclosed her potential interest in her late father's probate estate, the Property, or her involvement in the State and federal court lawsuits, though after Mr. Donald's death Debtor's Chapter 13 plan was amended twice on February 6, 2001, and September 4, 2001, to increase her payments.  Amended Orders [5], at 96, 128.

On December 12, 2005, the State court directed Debtor to exhaust her

administrative clean-up remedies with the Mississippi Commission on Environmental Quality ("MCEQ"), or to proceed without seeking damages in the State court suit.  *See* Oct. 27, 2014, Order [5-5], at 158.  Debtor filed a Petition and Request for Hearing with the MCEQ on January 9, 2006.  *Id.*  Plaintiffs-Appellees were added as defendants in the administrative proceedings on March 24, 2011.  *Id.*

On December 8, 2011, Mr. Donald's estate was finally closed and its assets were distributed.  Order Closing Estate [5-1], at 94.

Plaintiffs-Appellees discovered the existence of Debtor's bankruptcy case in July 2013 and raised the defense of judicial estoppel in the State court, federal court, and State administrative proceedings (the "Related Proceedings").  Oct. 27, 2014, Order [5-5], at 159.  All of the Related Proceedings were and have remained stayed as of the close of briefing on this appeal.[4]  *Id.*  On September 24, 2013, Debtor filed a Motion to Reopen her bankruptcy case in order to amend her schedules to disclose "potential assets," namely the "previously undisclosed property damages lawsuits in which [Debtor] is the named Plaintiff as the executrix of the estate of her deceased father . . . ."  Mot. to Vacate [5], at 183–84.  On November 25, 2013, the Court vacated the final decree and re-opened the bankruptcy proceeding.  Feb. 6, 2015, Order [3], at 49.  However, Debtor did not file any amended schedules until January 29, 2015.  *Id.* at 50.

---

[4] The parties have not advised the Court of any developments in the proceedings below that might alter this Court's analysis of the issues on appeal.

B.      The Adversary Proceeding

On February 12, 2014, the Reynolds Plaintiffs initiated an Adversary Proceeding in the Bankruptcy Court, seeking "a Declaratory Judgment in their favor and against the Debtor, Ms. Stephanie Howard, declaring that the doctrine of judicial estoppel prohibits the Debtor from prosecuting all of her claims in her three Related Proceedings." Compl. [5-3], at 27.  Plaintiffs Conquest, Moon-Hines-Tigrett and Chevron/Shell intervened in the Adversary Proceeding and joined the Reynolds Plaintiffs in seeking summary judgment.  Pls.' Mot. Summ. J. [5-4], at 16; Joinders [5-5], at 23–28.  Debtor also moved the Bankruptcy Court for summary judgment. Debtor's Mot. Summ. J. [16], at 46.

Following a hearing held on September 3, 2014, the Bankruptcy Court granted Plaintiffs-Appellees' Motion for Summary Judgment, denied Debtor's Motion for Summary Judgment, and held that (1) Debtor was judicially estopped from pursuing her claims in the Related Proceedings, (2) the Trustee was not estopped from pursuing said claims for the benefit of Debtor's creditors, and (3) any money damages left over after any creditors were paid should revert to Plaintiffs-Appellees.  Oct. 27, 2014, Order [5-5] at 175.

On November 10, 2014, Debtor filed a Motion to Alter or Amend the Judgment ([16], at 207), a Motion to Stay the Judgment ([16], at 225), and a Motion to Extend the Deadline to File Amended Schedules ([16], at 234).  The Bankruptcy Court denied all three Motions in its February 6, 2015, Order, and this appeal followed.  Feb. 6, 2015, Order [3], at 62.

> Debtor designated the following two issues for review on appeal:
>
> A. Did the Bankruptcy Court err on the grounds that the scope of the relief granted by the Bankruptcy Court's Order is overly broad to the extent that it judicially estopped Appellant Debtor from pursuing claims related to contamination on her property in which she seeks declaratory and/or injunctive relief that would *not* result in monetary reward to the Appellant Debtor and, in turn, benefit her creditors?
>
> B. Did the Bankruptcy Court err on the grounds that its Order applied judicial estoppel to the Appellant Debtor's claims in general, considering:
> (a) United States Supreme Court precedent precludes the imposition of a presumption of advertence upon the Appellant Debtor
> (b) no valid authority exists to support the contention that claims relating bequeathed real property [sic] pass to a beneficiary along with real property, and
> (c) several factors establish the Appellant Debtor's failure to disclose was a result of pure inadvertence?

Desig. R. Statement Issues Appeal [16-1], at 3 (emphasis in original). The foregoing issues were raised in Debtor's Rule 59 Motion to Alter or Amend the Court's October 27, 2014, Judgment based on the need to correct clear error or prevent manifest injustice, and were the subject of the February 6, 2015, Bankruptcy Court Order which is the subject of the present appeal. Feb. 6, 2015, Order [3], at 51.

## II. DISCUSSION

A.  Standard Of Review

When a district court sits as an appellate court in review of a bankruptcy court's decision, the bankruptcy court's conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). Judicial estoppel is an equitable doctrine falling within the exercise of a bankruptcy court's discretion, and the bankruptcy court's decision to invoke judicial

7

estoppel is reviewed for abuse of such discretion. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *see also Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 599 (5th Cir. 2005). "A court abuses its discretion when it bases its decision on an incorrect view of the law or a clearly erroneous assessment of the evidence." *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) (internal citation omitted).

B.     Judicial Estoppel

The doctrine of judicial estoppel prevents a party from asserting a position in one proceeding that is inconsistent with a position taken by that party in a previous proceeding.[5] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel is applied to protect the integrity of the judicial process by preventing parties from "playing fast and loose with the courts" to gain an advantage and lessening the risk of inconsistent or inequitable court determinations. *See id.*; *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).

In assessing whether judicial estoppel should operate to bar a party from asserting an inconsistent position in subsequent litigation, the Fifth Circuit has directed courts to examine whether the following elements are present: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and

---

[5] Judicial estoppel is "a discrete doctrine" from claim and issue preclusion, which bear on the preclusive effects of a prior judgment in later litigation. *New Hampshire*, 532 U.S. at 749. Judicial estoppel has sometimes been referred to as "the doctrine of preclusion of inconsistent positions." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

(3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

A party can take an inconsistent legal position by making a contradictory statement or by omitting relevant information that the party had a duty to disclose. *In re Superior Crewboats, Inc.*, 374 F.3d at 335 ("[O]mission of [a] personal injury claim from . . . mandatory bankruptcy filings is tantamount to a representation that no such claim existed."). A debtor in a Chapter 13 bankruptcy, for example, has a duty to disclose any potential unliquidated claims or causes of action to the bankruptcy court. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012); *In re Castillo*, 508 B.R. 1, 7–8 (Bankr. W.D. Tex. 2014) ("[A] Chapter 13 debtor has a continuing duty to disclose even a post-petition cause of action because debtors have an express, affirmative duty to disclose all assets even if there is uncertainty about if those assets are property of the estate."). Chapter 13 debtors have a duty to disclose post-confirmation assets notwithstanding uncertainty as to whether the asset may be ultimately adjudged to be property of the bankruptcy estate or vested in the debtor. *In re Flugence*, 738 F.3d 126, 129–30 (5th Cir. 2013); *see also Allen v. C & H Distributors, L.L.C.*, No. 15-30330, slip op. at 5–6, 2015 WL 9461591, at *2 (5th Cir. Dec. 23, 2015). This disclosure requirement allows the bankruptcy court to determine whether or not the asset should be available to satisfy creditors as part of the orderly bankruptcy process. *In re Flugence*, 738 F.3d at 130.

If a party has taken an inconsistent legal position, that position must also have been accepted by a court and the party must not have acted inadvertently for

9

judicial estoppel to apply. *Reed*, 650 F.3d at 574. In cases involving the pursuit of claims that were undisclosed in a bankruptcy proceeding, a party has acted inadvertently "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210.

D.  <u>The Bankruptcy Court Did Not Abuse its Discretion in Applying Judicial Estoppel to Debtor's Undisclosed Claims Seeking Declaratory and/or Injunctive Relief</u>

For her first issue on appeal, Debtor claims that judicial estoppel should not have been applied to her claims for declaratory and/or injunctive relief. Debtor's Motion to Alter or Amend the Bankruptcy Court's October 27, 2014, Judgment was the first time she argued that her claims for declaratory and/or injunctive relief in the Related Proceedings should not be barred by judicial estoppel because they "would not result in monetary reward to the Appellant Debtor and, in turn, benefit her creditors." Mem. Supp. Mot. Alter or Amend [16], at 212. The Bankruptcy Court found that this argument could have been raised but was not before it entered its Order and was, therefore, not a proper argument under Federal Rule of Civil Procedure 59. Feb. 6, 2015, Order [3], at 55. This finding was accurate, and was not an abuse of discretion.

The Bankruptcy Court also noted that this argument "would likely fail on the merits" because at the January 30, 2015, hearing, Debtor's counsel conceded that her declaratory and injunctive claims, if successful, would add value to the Property. *Id.* at 56 n.11. The Court has reviewed the transcript of that hearing and

finds that Debtor's counsel did concede that if Debtor were successful in her declaratory and injunctive claims, the Property would increase in value to the benefit of Debtor and the bankruptcy estate.  Transcript [5-6], at 25.

Moreover, the "declaratory" claims in the Related Proceedings request that Defendants be declared liable for the costs of cleanup and remediation of the Property.  See Debtor's Mem. Supp. Mot. Alter or Amend [16], at 214.  It is difficult to see a significant equitable distinction within the context of this case between a direct claim for money damages and a "declaratory" claim for liability for clean-up costs, which could increase the value of the Property to Debtor's benefit.  It was not an abuse of discretion for the Bankruptcy Court to apply judicial estoppel to Debtor's claims for declaratory relief.

The Court further finds that the fact that Debtor's declaratory and injunctive claims would not result in a "monetary reward" does not undermine the Bankruptcy Court's conclusion that Debtor was motivated to conceal the claims.  As the record reveals, claims for declaratory and injunctive relief can be settled for a monetary sum just as easily as claims for damages.  During the pendency of her bankruptcy proceedings, Debtor was also seeking to enforce a $380,000.00 settlement agreement related to the undisclosed claims in State court.  Mot. to Enforce [5-5], at 115–30.  By actively concealing her interest in the Property, Debtor shielded this asset and any potential settlement proceeds from her creditors.  The Bankruptcy Court did not abuse its discretion in determining that judicial estoppel should be applied to Debtor's declaratory and injunctive claims in the Related Proceedings.

    C.    <u>The Bankruptcy Court Did Not Abuse its Discretion in Applying Judicial Estoppel to Bar Debtor from Pursuing her Undisclosed Claims</u>

To establish that the Bankruptcy Court's February 6, 2015, Order applying judicial estoppel constituted an abuse of discretion, Debtor must show that the Bankruptcy Court "base[d] its decision on an incorrect view of the law or a clearly erroneous assessment of the evidence." *In re Oparaji*, 698 F.3d at 235.  In Debtor's second issue on appeal, Debtor makes three arguments why the Bankruptcy Court abused its discretion in applying judicial estoppel:  (1) United States Supreme Court precedent precludes the imposition of a presumption of advertence; (2) no valid authority exists to support the contention that claims relating to bequeathed real property pass to a beneficiary along with real property; and (3) several factors establish Debtor's failure to disclose was a result of pure inadvertence.  Having carefully considered the parties' positions and other relevant materials, the Court finds that each of these arguments is unsupported by the record.

    1.  <u>The Bankruptcy Court Did Not Presume Advertence</u>

Debtor argues that the Bankruptcy Court abused its discretion by imposing a presumption of advertence in violation of Supreme Court precedent.  The record reflects, however, that the Bankruptcy Court did not apply a presumption of advertence to Debtor; rather, the Bankruptcy Court appropriately applied the burden-shifting framework discussed by the Fifth Circuit in *Love*, 677 F.3d at 262.  First, it is undisputed that Debtor did not disclose the relevant claims.  Second, Plaintiffs-Appellees presented evidence of Debtor's motivation to conceal the claims

by showing the potential value of the claims and referring the Bankruptcy Court to earlier settlement negotiations valuing the State court claims at $380,000.00.  *See* Pls.' Supp. Mot. Summ. J. [5-5], at 109–12.  Next, it was Debtor's burden to show that her failure to disclose was inadvertent.  The Bankruptcy Court found that Debtor did not meet this burden:

> the Court applied the burden-shifting analysis articulated by the Fifth Circuit Court of Appeals in *Love* and held that because the Plaintiffs presented a motive to conceal (the prospect of keeping any potential recovery for herself at the expense of her creditors), the burden of proof shifted to the Debtor to show that her failure to disclose was inadvertent.  The Court then held that the third element of judicial estoppel was satisfied because the Debtor failed either to set forth any viable argument or to otherwise create a fact issue whether she acted inadvertently.

*See* Feb. 6, 2015, Order [3], at 53 (internal citations omitted).  Based on a thorough review of the record on appeal, the Bankruptcy Court did not abuse its discretion by applying a presumption of advertence, because no such presumption was applied.

  2. <u>Whether Claims Related to Inherited Property Pass to a Beneficiary Along with the Property</u>

Debtor next argues that the Bankruptcy Court abused its discretion in applying judicial estoppel to her undisclosed claims because no clear authority establishes that those claims passed to her along with ownership of the Property.  Debtor argues that the case cited by the Bankruptcy Court for this proposition, *Stanley v. Cromwell (Estate of Wright)*, 829 So. 2d 1274, 1277–78 (Miss. Ct. App. 2002), involves more complicated issues of testamentary intent and does not directly state that claims relating to real property pass *immediately* along with the real property at the testator's death.  Appellant's Brief [20], at 30–32 (emphasis

13

added).  The Court has reviewed *Stanley* and finds that although the case discusses whom among several beneficiaries in a will contest is entitled to proceeds of a lawsuit concerning real property, it does not settle the question of precisely when those claims vest, whether before or after probate.  *See Stanley*, 829 So. 2d at 1277–78 .

As Plaintiffs-Appellees point out, however, Debtor's argument on this issue is purely academic under the facts of this case.  Appellees' Brief [26], at 44.  Debtor not only failed to disclose the existence of the claims at any time, she failed to disclose the existence or her inheritance of the Property itself.  Debtor was her father's sole beneficiary, so there could be no dispute that she would and did inherit the Property.  Mississippi law is abundantly clear that ownership of real property vests immediately at death.  *In re Estate of McRight*, 766 So. 2d 48, 49 (Miss. Ct. App. 2000) ("[W]hether by intestate death and succession or by last will and testament, a deceased's real property vests immediately at death in his heirs or devisees.").  By not disclosing her inheritance of the Property, Debtor was able to shield the Property and any potential value or revenue from the claims related thereto from her creditors.

While *Stanley* may not firmly establish *when* the claims related to the Property vested in Debtor personally rather than as executrix of her father's estate, *Stanley* does clearly establish that those claims would eventually pass to Debtor as owner of the Property under Mississippi law.  *Stanley*, 829 So. 2d at 1277–78.  The record reveals that Debtor was aware of the potential monetary benefit that she

could derive from both the Property and the lawsuits during the pendency of her bankruptcy proceedings.  *See TotalFina E & P USA, Inc.*, 899 So. 2d at 889–90 (discussing Debtor's efforts to enforce a proposed $380,000.00 settlement).

Under the particular circumstances of this case, Debtor was under an obligation to disclose the Property and the claims related to it as an asset when ownership of the Property passed to her: upon her father's death in January 2001, and certainly no later than when she was substituted as a party-plaintiff in both cases, all of which occurred before the Bankruptcy Court granted Debtor a discharge on August 15, 2005.  *See* State Court Motion to Substitute [5-1], at 82–83 (requesting that the State court "substitute [Debtor] in lieu of and in the stead of her deceased father, Gerald Donald as the party plaintiff in this matter" on March 29, 2001).  Moreover, after Debtor moved to reopen the bankruptcy for the specific purpose of amending her schedules on September 24, 2013, and after the Bankruptcy Court granted Debtor's request and reopened the bankruptcy on November 25, 2013, for that purpose, Debtor still did not amend the schedules to disclose her claims or interest in the Property until after the Bankruptcy Court granted summary judgment on October 27, 2014, and applied judicial estoppel.

Because Debtor failed to disclose not only the claims related to the Property, but her ownership of the Property itself, the Bankruptcy Court did not abuse its discretion by estopping Debtor from pursuing her existing claims arising from her ownership of the undisclosed Property.

15

### 3. The Bankruptcy Court Properly Considered and Rejected Debtor's Assertion of Inadvertence

Debtor's third and final argument that the Bankruptcy Court abused its discretion in applying judicial estoppel is that "several factors establish the Appellant Debtor's failure to disclose was a result of pure inadvertence." Debtor argues that she has "advanced several argument beyond that she was simply unaware of her duty to disclose." Appellant's Brief [20], at 34. The Court has reviewed Debtor's briefing and finds only renewed arguments from the proceedings below that the state of the law regarding disclosure of post-confirmation, pre-discharge assets for Chapter 13 debtors was unsettled at the time and, thus, Debtor did not realize that she had a duty to disclose. *Id.* at 34–39.[6]

Applying Fifth Circuit precedent, the Bankruptcy Court considered and rejected this position, and the Court finds that its decision to apply judicial estoppel was not an abuse of discretion. Oct. 27, 2014, Order [5-5], at 168–71. While Debtor's briefing centers on the unsettled state of the law regarding a Chapter 13

---

[6] On summary judgment in the Adversary Proceeding below, Debtor argued that she did not have a duty to disclose, but that even if she did, a finding of inadvertence was warranted because:
    (a) the law on disclosure at the time she allegedly breached her duty was unsettled at best,
    (b) because she was only connected to the subject property as the executrix of her father's estate (that remained open until six years after she was discharged) and not as an individual, she did not believe this connection necessitated disclosure, and
    (c) her confirmation order defined what was to comprise her bankruptcy estate and she believed her connection to the property and proceedings did not necessitate disclosure.
Debtor's Reply Mot. Summ. J. [16], at 192.

16

Debtor's duty to disclose claims that arise post-confirmation, Debtor glosses over the uncontested fact that she not only failed to disclose the claims in the Related Proceedings, but failed to disclose any inheritance from her father including the Property itself.  Debtor does not argue that there was unsettled law regarding her duty to disclose the inheritance of the Property.

Debtor cannot hide behind her status as "executrix of her father's estate" to claim that she was unaware of her ownership interest in the Property where it is undisputed that she was the sole heir and beneficiary in her father's will.  The Bankruptcy Court did not abuse its discretion in finding that Debtor had played fast and loose with the courts by availing herself of the benefits of a Chapter 13 discharge while simultaneously (and unknown to her creditors) pursuing potentially valuable claims in other forums based on an undisclosed inheritance.

As Plaintiffs-Appellees have argued (Appellees' Brief [26], at 48), "inadvertence" is a term of art used within the context of judicial estoppel that can be proven by establishing (1) that the Debtor did not know of the facts giving rise to the inconsistent positions or (2) that she had no motive to conceal those facts from the Court.  *In re Flugence*, 738 F.3d at 131 ("That [Debtor] did not know that bankruptcy law required disclosure—even if true—is, according to [Fifth Circuit] precedents, irrelevant.").

Considering the record before the Bankruptcy Court, this Court cannot say it was an abuse of discretion to find that Debtor's omission was not inadvertent. Debtor had motive to conceal her potentially valuable inheritance and the claims

17

related to it, and she was aware of the fact that she inherited the Property and the status of the claims involving the Property in the Related Proceedings. Debtor was also aware that a Chapter 13 plan could be modified and the procedure for making modifications, as evidenced by the two amendments to her Chapter 13 plan on February 6, 2001, and September 4, 2001, to increase her payments. Amended Orders [5], at 96, 128. Had her creditors known of her inheritance of the Property and claims in the Related Proceedings, they might have been able to seek another modification of Debtor's Chapter 13 plan. Debtor's failure to disclose deprived her creditors of that opportunity.[7]

---

[7] Debtor claims that the language of her Confirmation Order gave her reason to believe that any success in her claims would have had no effect on her earnings, and thus the claims were not property of the bankruptcy estate and could not benefit her creditors. Appellant's Reply [30], at 8. This belief did not relieve her of her duty to disclose the claims and her inheritance. *See In re Flugence*, 738 F.3d at 129–30 ("[T]he debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process.").

For example, in *In re Peebles*, 500 B.R. 270, 271 (Bankr. S.D. Ga. 2013), the Chapter 13 Debtor received a post-confirmation inheritance in the amount of $45,054.37, and promptly disclosed the potential asset to the bankruptcy court. *Id.* at 272. The Chapter 13 trustee then had the opportunity to propose a modification of the Chapter 13 plan. *Id.* Under the facts of that case, the bankruptcy court ultimately determined that the inheritance was not property of the bankruptcy estate and the trustee's suggested modification was disapproved. *Id.* at 279; *contra In re Mizula*, 525 B.R. 569, 573 (Bankr. D.N.H. 2015) (holding a Chapter 13 debtor's post-confirmation inheritance upon his mother's death was property of the bankruptcy estate and allowing the debtor's Chapter 13 plan to be modified).

The debtor in *In re Peebles* also had reason to believe that his inheritance would not be property of the bankruptcy estate, and he was ultimately correct. But, by disclosing the asset and allowing the bankruptcy court to make that determination, he fulfilled his duty to disclose as part of the orderly bankruptcy process. Debtor's failure to disclose in this case deprived her creditors of their opportunity to seek modification.

As one bankruptcy court within the Fifth Circuit has stated: "The three most important words in the bankruptcy system are: disclose, disclose, disclose." *In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007). The Bankruptcy Court did not abuse its discretion in finding that Debtor's omission was not inadvertent. Oct. 27, 2014, Order [5-5], at 170–72.

### III. CONCLUSION

The Court has considered the parties' arguments on appeal, and those not discussed would not have altered the result.

For the forgoing reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in applying judicial estoppel or otherwise in denying Debtor's Motion to Alter or Amend its October 27, 2014, Judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the February 6, 2015, Order of the United States Bankruptcy Court for the Southern District of Mississippi, denying Debtor relief from the October 27, 2014, Order granting summary judgment to Plaintiffs-Appellees, should be and hereby is **AFFIRMED**. This appeal is hereby **DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 13th day of January, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE